IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Paul Eric Schwartz,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br>Acting Commissioner of Social<br>Security,<br><br>    Defendant.<br>_____ | Civil Action No. 2:15-cv-02685-TMC-MGB<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Paul Eric Schwartz, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

Plaintiff was 41 years old on his amended alleged disability onset date of December 7, 2010. (R. at 12, 20, 30.)[2] Plaintiff claims disability due to degenerative disc disease, left greater trochanteric bursitis, left shoulder impingement, status post right shoulder Bankart repair and arthroscopy, obesity, obstructive sleep apnea, and hypertension. (R. at 14.) Plaintiff has a GED as well as a technical diploma in electronics; he has past relevant work as a project engineer, commercial technician, technician, and radio repairer. (R. at 20, 30.)

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2] Plaintiff originally alleged his disability onset date was November 20, 2004. (R. at 12.) At the hearing, he amended his alleged disability onset date to December 7, 2010. (R. at 12.)

Plaintiff filed an application for DIB on April 9, 2012. (R. at 12.) After his application was denied initially and on reconsideration, a hearing was held before an Administrative Law Judge (ALJ) on November 20, 2013. (R. at 12.) In a decision dated March 3, 2014, the ALJ found that Plaintiff was not disabled. (R. at 12-21.) The Appeals Council denied Plaintiff's request for review, (R. at 1-5), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> (2) The claimant has not engaged in substantial gainful activity since December 7, 2010, the amended alleged onset date (20 CFR 404.1571 *et seq*.).
>
> (3) The claimant has the following severe combination of impairments: degenerative disc disease, left greater trochanteric bursitis, left shoulder impingement, status post right shoulder Bankart repair and arthroscopy, obesity, obstructive sleep apnea, and hypertension (20 CFR 404.1520(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with pushing and pulling 10 pounds occasionally and 5 pounds frequently. The claimant can occasionally climb ramps or stairs, stoop, and kneel, but can never climb ladders, ropes or scaffolds, balance for safety on dangerous surfaces, crouch or crawl. He can occasionally reach and lift overhead and can frequently reach and lift in other directions bilaterally. He must avoid exposure to hazards, such as unprotected heights and dangerous machinery or exposed parts, and avoid concentrated exposure to cold. He can frequently handle and finger bilaterally. Further, the claimant should have a sit/stand option at the work station every 30 minutes to 1 hour. He is limited to performing simple, routine, repetitive tasks for two hours at a time, with no fast-paced production rate work, to account for potentially decreased concentration due to pain.

>  (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
>  (7) The claimant was born on December 8, 1968, and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).
>
>  (8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
>  (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>  (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
>  (11) The claimant has not been under a disability, as defined in the Social Security Act, from December 7, 2010, through the date of this decision (20 CFR 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing

substantial gainful employment. *See* 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. *See Grant*, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *See id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion

4

is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

Plaintiff claims the ALJ erred in failing to find him disabled. Specifically, Plaintiff contends the ALJ "failed to analyze the factors Social Security Ruling 96-7p required be considered before making or drawing inferences from Plaintiff['s] failure to obtain regular medical care." (Dkt. No. 12 at 4 of 9.) Plaintiff also asserts the ALJ "failed to consider all of Plaintiff's impairments and their combined effect on his ability to sustain gainful employment." (Dkt. No. 12 at 7 of 9.)

### A.     Social Security Ruling 96-7p

As to Plaintiff's first allegation of error, Plaintiff asserts that Social Security Ruling 96-7p "provides that an adjudicator must not draw any inference from an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that explain infrequent or irregular medical care." (Dkt. No. 12 at 5 of 9.) Plaintiff contends that the ALJ "made multiple adverse inferences concerning the effects and limitations of Plaintiff's symptoms when she considered Plaintiff's severe physical symptoms based on Plaintiff's infrequent medical care or the lack of emergency room or medical specialist care." (*Id*.) Plaintiff complains the ALJ "did not ask Plaintiff if he had received medical care for his degenerative disc disease from June 2005 until September 2011." (*Id*.) According to Plaintiff, had the ALJ asked Plaintiff whether he "received medical care for his back pain during that period, Plaintiff would have answered that he did." (*Id*.) Plaintiff also complains the ALJ "noted that Plaintiff had not been seen by a specialist for his sleep apnea and hypertension," when she "did not ask Plaintiff if he had been treated by a specialist for his sleep apnea or hypertension," nor did she "ask Plaintiff's primary care physician if Plaintiff had been referred to or treated by a specialist for his sleep apnea." (Dkt. No. 12 at 5-6 of 9.) Plaintiff states,

5

> Rather than developing the facts to determine if Plaintiff had received medical care for his back pain during the period June 2005 through September 2011 or if Plaintiff had been treated by a medical specialist for his sleep apnea or hypertension, the Administrative Law Judge infers that the absence of records documenting such reduces Plaintiff's credibility. Such action violates Social Security Ruling 96-7p.

(Dkt. No. 12 at 6 of 9.)

As stated in *Fisher v. Barnart*, 181 F. App'x 359 (4th Cir. 2006),

> Two nearly identical regulations, 20 C.F.R. §§ 404.1529 and 416.929, explain how the Social Security Administration evaluates a claimant's symptoms to determine whether he or she is disabled, and Social Security Ruling 96–7p clarifies these regulations by explaining when and how an ALJ can weigh the credibility of the claimant's own testimony.

*Fisher*, 181 F. App'x at 363. "[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). First, the plaintiff must present "objective medical evidence showing the existence of a medical impairment(s) which results from the anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks and citations omitted). The Fourth Circuit explained as follows:

> It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. *See* 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, *see id.*; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), *see* 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, *see* 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

*Craig*, 76 F.3d at 595; *see also* SSR 96-7p, 1996 WL 374186, at *3 (listing factors "the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements").

In her decision, the ALJ stated, *inter alia*,

6

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

Treatment notes fail to indicate the level of dysfunction that the claimant is alleging. The undersigned finds that the claimant suffers from degenerative disc disease of the spine, left greater trochantric bursitis, left shoulder impingement, and status post right shoulder Bankart repair and arthroscopy, which are severe impairments, but not to the extent of being disabling. **Medical records indicate that he was involved in a car accident in October 2004 and has since had pain in his lower back and neck. For this, he was treated until June 2005. (Exhibit 1F). After this, the claimant was not seen until September 2011**. At this initial orthopedic consultation in September 2011, the claimant complained of right shoulder pain. He reported that since November 1997, he had limited movement and discomfort. However, he reported he had a good range of motion and functioned well throughout the day. An X-ray of the claimant's shoulder showed a mineralizing synovial based lesion with a cartilaginous pattern. An MRI showed a heterogeneous synovial based process, and it was assessed he was suffering from a likely synovial chondromatosis of the right shoulder. (Exhibit 4F).

In January 2012, the claimant was seen by a spine specialist for an initial consultation of his low back and neck pain. At this time, his gait was not antalgic or widened, and his balance was normal. There was no point tenderness at the midline, although there was paraspinal tenderness and painful range of motion. He was assessed as suffering from low back pain, right lower extremity radiculopathy, and right shoulder pain. (Exhibit 3F). An MRI in February 2012 found canal narrowing and mild canal stenosis, with mild-to-moderate foraminal narrowing at L4-5, mild canal narrowing at L3-4, and no focal disc herniation. (Exhibit 9F).

After two follow-up visits in March, the claimant underwent an arthroscope-assisted mini open removal of the right shoulder loose bodies and mass with an arthroscopic complete synovectomy, after having been diagnosed with a synovial chondramatosis, in April 2012. (Exhibit 4F). In April, he reported that since his surgery two weeks earlier, his pain was only a four on a one to ten pain scale, and his pain was controlled with pain medication. (Exhibit 3F). During follow-up examinations in May, June, and July, the claimant reported his symptoms had improved with medication. In May, he was also instructed to start physical therapy for his shoulder. (Exhibits 4F, 5F). In October 2012, the claimant reported to his orthopedic specialist that his pain was stable on his current medication regimen. EMG and nerve conduction studies of the claimant's upper extremities performed for his complaints of upper extremity pain in October 2012 were normal and showed no electrodiagnostic evidence of radiculopathy, entrapment neurology or myopathy. . . . Throughout 2013, the claimant was seen five times by his orthopedic specialist. However, other than a recommendation for an MRI in August 2013, no additional treatment was rendered

necessary. The claimant continued on pain medication and at visits reported his pain was a five on the ten point pain scale. (Exhibit 14F).

The claimant has been assessed as suffering from degenerative disc disease of the spine, left greater trochantric bursitis, left shoulder impingement, status post right shoulder Bankart repair and arthroscopy. In terms of surgery, the claimant underwent arthroscopic surgery in April 2012. (Exhibit 4F). After surgery, medical records indicate the claimant's symptoms of pain were controlled with the use of pain medication, and physical examinations were generally normal. (Exhibits 5F, 6F, 7F, 8F, 10F, 14F). **While physical therapy was recommended, there is no indication he ever sought any physical therapy**. While the claimant was limited during recovery from his shoulder surgery, he was back to baseline per his physician within 12 months. He was seen during scheduled appointments with his orthopedic specialist but never sought any urgent or emergency medical treatment for pain or other symptoms related to his impairments.

Further, the claimant has been assessed as suffering from obstructive sleep apnea and hypertension. In November 2011, the claimant's primary care physician noted the claimant had been diagnosed as suffering from obstructive sleep apnea, but it appeared to be controlled with the use of a CPAP machine. (Exhibit 2F). With regards to his hypertension, at a new patient appointment in September 2011, the claimant reported he had been off his blood pressure medication for the past year, and at the appointment, his blood pressure reading was 158/98. (Exhibit 2F). He was started on medication, and in November 2011, his blood pressure reading was 138/86. (Exhibit 2F). In April 2012, his blood pressure read 128/80. (Exhibit 2F). For both the claimant's obstructive sleep apnea and hypertension, he never sought any emergency medical attention. **He was never seen by a specialist for either condition.** Additionally, treatment notes indicate that the claimant's obstructive sleep apnea and hypertension are well controlled on the CPAP machine and hypertension medication. No complications resulting from either condition have been noted in the treatment records.

. . .

The undersigned has also evaluated the claimant's subjective complaints but finds them to be exaggerated. While he reported that he is too limited to work, he testified that he is able to drive a car, drive his children to and from the bus stop each day, help his children with their homework, and go grocery shopping once a week. Further, while he testified he is unable to work due to his impairments, he stated that after he stopped working in December 2010, he moved in with his mother to take care of her, indicating he is not as limited as he alleged.

The claimant also received unemployment benefits until September 2012. While he was receiving unemployment benefits, he looked for jobs in the computer and security fields, and went on one interview. This implies that he was not as limited as alleged during the period in question. In order to receive state unemployment benefits, individuals must certify that they are able to work, are available for full-time work

>and willing to accept suitable work if offered, and are actively seeking full-time work each week. See, Black v. Apfel, 143 F3d 383 (8th Cir. 1998) (stating that acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim for disability).
>
>. . .
>
>In sum, the above residual functional capacity assessment is supported by the weight of the medical evidence of record. Based on the findings, the undersigned cannot find the claimant fully credible in his representation regarding his functional limitations. A review of the medical evidence of record fails to indicate that the claimant was ever directed to stop working. The claimant's allegations have been taken into account in limiting him to sedentary work with additional limitations. However, the undersigned cannot find the claimant's allegation that he is unable to perform all work activity to be credible.

(R. at 17-20 (emphasis added).)

Having carefully reviewed the record and the parties' briefs, the undersigned recommends reversing and remanding the instant action. Social Security Ruling 96-7p states that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 WL 374186, at *7. The ruling further states, however, that "the adjudicator **must not** draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment **without first considering** any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id*. (emphasis added). Here, the ALJ found Plaintiff "not entirely credible," noting that the "[t]reatment notes fail to indicate the level of dysfunction that the claimant is alleging." (R. at 17.) In that same paragraph, the ALJ indicated that Plaintiff was not seen from June of 2005 until September of 2011. (R. at 17.)

At the hearing, counsel stated that he expected to receive a functional capacity questionnaire form Dr. Lembo, Plaintiff's treating physician, and asked to leave the record open for fourteen days. (R. at 29.) The ALJ stated that she would hold the record open. (R. at 29.) It does not appear that

Plaintiff ever submitted any additional medical records to the ALJ, but Plaintiff did submit medical records from February 24, 2009 to November 16, 2010[3] to the Appeals Council. (*See* R. at 5, 407-24.)[4] The record from February 24, 2009 indicates that Plaintiff was seen by Dr. Fairfax at West Ashley Family Medicine for hearing loss and back pain. (R. at 407-08.) Plaintiff was also seen–for other complaints–on March 26, 2009; May 5, 2009; December 17, 2009; March 30, 2010; and November 16, 2010.[5] (R. at 409-24.)

Clearly the ALJ concluded that Plaintiff was not entirely credible due to the lack of treatment records for the specified time period. The ALJ did not, however, "consider[] any explanations that the [Plaintiff] may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, at *7. Failure to do so was erroneous. In *Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008), the Seventh Circuit concluded the ALJ erred with respect to the credibility determination, stating,

---

[3]The order of the Appeals Council indicates that medical records through April 27, 2011 were made part of the record. (R. at 5.) However, this date appears to be erroneous, as April 27, 2011 is listed on the records as the "encounter closed date," not the "encounter date." (*See* R. at 407-24.)

[4]The regulations provide, *inter alia*,
> The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any *new and material* evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision. If you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application. . . .

20 C.F.R. § 404.976(b)(1) (emphasis added); *see also* 20 C.F.R. § 404.970(b). "Evidence is new . . . if it is not duplicative or cumulative," and "[e]vidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins v. Sec'y*, 953 F.2d 93, 96 (4th Cir. 1991) (citations omitted).

[5]Dr. Fairfax saw Plaintiff on March 26, 2009 for Plaintiff's complaint of depression. (R. at 409-11.) Dr. Fairfax's notes from May 5, 2009 indicate that Plaintiff complained of depression and a thyroid problem. (R. at 412-13.) Dr. Fairfax saw Plaintiff on December 17, 2009 for a thyroid problem, and on March 30, 2010 for a rectal problem. (R. at 414-18.) He was seen again by Dr. Fairfax on November 16, 2010 for a thyroid problem and a rectal problem. (R. at 422-24.)

The undersigned notes Defendant's argument that "[a]t most, the treatment notes document that Plaintiff saw his primary care physician only one time between June 2005 and September 2011 for a backache" and that "[t]his evidence hardly warrants remand." (Dkt. No. 13 at 15 of 21 n.3.) While Defendant is correct that the at-issue medical records indicate Plaintiff was seen only once for back pain during this period, this does not change the fact that the ALJ did not–in spite of evidence in the record of Plaintiff's limited ability to pay for medical treatment–inquire as to any explanation for Plaintiff's infrequent treatment. *See infra* p. 11.

10

> First, the ALJ found that Craft's complaints were not entirely credible because he "did not seek any treatment from 1998 to 2001." While reciting Craft's medical history, the ALJ acknowledged that Craft was treated several times during 1998 and 2001—which left only 1999 and 2000 without treatment. The ALJ failed to note, however, that Craft was also treated on September 28, 2000. The government asserts that this was harmless error because the doctor's report from the visit in 2000 did not contain any information of substance, and it still demonstrates Craft's "dearth of treatment" during that time period. Several of Craft's medical records noted, however, that Craft had been out of compliance with his medicine and did not seek regular treatment because of his inability to cover the associated costs. In assessing credibility, infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment. SSR 96–7p. However, the ALJ "must not draw any inferences" about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care. *Id.* An inability to afford treatment is one reason that can "provide insight into the individual's credibility." *Id.* Here, although the ALJ drew a negative inference as to Craft's credibility from his lack of medical care, she neither questioned him about his lack of treatment or medicine noncompliance during that period, nor did she note that a number of medical records reflected that Craft had reported an inability to pay for regular treatment and medicine.

*Craft*, 539 F.3d at 678-79.

As in *Craft*, the ALJ in the case *sub judice* drew a negative inference as to Plaintiff's credibility due to his lack of treatment, without inquiring as to any explanation from Plaintiff. Failure to do so constitutes legal error, especially in light of the evidence presented at the hearing that Plaintiff has limited resources with which to pay for treatment. (*See* R. at 39, 44.) Plaintiff testified that when he went back to Vocational Rehabilitation, he "couldn't afford to pay the doctor's payments, so Voc Rehab covered all the initial payments and everything." (R. at 39.) When his attorney inquired about the pain patches Plaintiff had been wearing, Plaintiff stated, *inter alia*, "Tomorrow's my change date and I'm looking forward to that [(changing his pain patch)] because everything's starting to hurt again. We've actually gotten to the point where we couldn't afford to buy my patches, and I could not move at all." (R. at 44.) As stated in *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986), "[a] claimant may not be penalized for failing to seek treatment []he cannot afford. . . ."

11

Accordingly, the undersigned recommends remanding the instant action.[6] *See Craft*, 539 F.3d at 678-79; *Mills v. Colvin*, Civ. A. No. 1:13-792-SVH, 2014 WL 4063598, at *22 (D.S.C. Aug. 12, 2014) (finding the ALJ's credibility analysis "flawed," stating, "The ALJ explicitly considered the infrequency of Plaintiff's medical treatment in assessing the limiting effects of his symptoms. Tr. at 23. SSR 96–7p makes it clear that the ALJ should not draw conclusion[s] about a claimant's symptoms and their functional effects from a failure to seek or pursue medical treatment without seeking explanation from the claimant. The ALJ twice had the opportunity to question Plaintiff about his lack of treatment, but he failed to do so. Upon remand, the ALJ should question Plaintiff and obtain additional evidence, if necessary, in order to determine Plaintiff's reasons for failing to seek or pursue regular medical treatment and should make a new credibility determination."); *Sox v. Astrue*, Civ. A. No. 6:09-1609-KFM, 2010 WL 2746718, at *13 (D.S.C. July 2, 2010) ("[T]he ALJ's discussion of the plaintiff's 'erratic course of treatment' is located in the midst of his analysis of the plaintiff's credibility (*see* Tr. 18–22). Further, the ALJ did not consider the explanation the plaintiff gave, lack of funds, for ceasing to see certain doctors. Upon remand, before drawing any negative inferences about the plaintiff['s] symptoms and their functional effects from her irregular medical visits, the ALJ is instructed to consider the plaintiff's explanation along with the evidence in the case record supporting the explanation."); *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1097 (E.D. Wis. 2001) ("This ruling requires an ALJ to ask a claimant for an explanation or to search the record for an explanation before drawing an adverse inference as to the severity of the claimant's condition based on medical visits. In the present case, the ALJ inferred from plaintiff's record of doctor visits that she was exaggerating the severity of her symptoms without inquiring as to the reason. For this reason also, the ALJ used the evidence regarding medical visits improperly.").

---

[6]The undersigned expresses no opinion herein as to the credibility conclusion the ALJ should reach upon remand; reversal is recommended due to a legal error.

**B**.    **Remaining Claims of Error**

Because the Court finds the ALJ's flawed credibility analysis is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error, including Plaintiff's assertion that the ALJ "failed to consider all of Plaintiff's impairments and their combined effect on his ability to sustain gainful employment." (Dkt. No. 12 at 7 of 9.)

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above.

IT IS SO RECOMMENDED.

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 25, 2016
Charleston, South Carolina